CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.*
OWENS.

Opinion delivered May 17, 1915.

1. RAILROADS—INJURY TO PASSENGER—PLATFORM.—Railroads are required only to exercise ordinary care in providing station platforms that will secure their passengers, insofar as they can do so, against any injury that may result from the use of them.

2. RAILROADS—STATIONS AND APPURTENANCES.—A railroad company is under a duty to exercise ordinary and reasonable care to so con-

struct and maintain station buildings or depots and appurtenances, that they shall be safe for use by passengers.

3.  DAMAGES—RAILWAY PASSENGER—PUNITIVE DAMAGES.—Where plaintiff did not board a train before it started, by reason of having fallen over an obstruction on the platform, and the conductor backed the train up once and plaintiff failed to board it, the defendant will not be liable in punitive damages by reason of plaintiff's being left, because of the failure of the conductor to back it up the second time for the plaintiff.

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; reversed.

*Thos. S. Buzbee, John T. Hicks, H. T. Harrison* and *C. L. Johnson,* for appellant.

1. Instruction No. 2, holding defendant to the "highest degree of care" as to station or platforms is not the law. Elliott on Railroads, p. 406, par. 1590; 65 Ark. 255; 96 *Id.* 311; 167 S. W. 486.

2. This is not a case for exemplary damages. 53 Ark. 7; 77 *Id.* 115.

*Baldy Vinson* and *S. M. Wassell,* for appellee.

1. Appellee was a passenger and the carrier is, in effect, *prima facie* responsible for the smallest negligence. There is no error in the court's charge. She obeyed the directions of the carrier's servant. By not waiting a reasonable time, Kirby's Digest, § 6704, was violated.

2. The company was guilty of negligence in the operation of its train. 96 Ark. 315; 65 *Id.* 255.

3. The verdict for exemplary damages is sustained by the evidence. There was willfulness or conscious indifference to consequences from which malice may be inferred. 80 Ark. 164; 58 *Id.* 136; 53 *Id.* 7; 58 *Id.* 136; 78 *Id.* 331. Here there was a willful violation of a statute and an indifference to results. 84 Ark. 248; 42 *Id.* 321. See also 36 Miss. 660; 58 Ark. 136; Hale on Damages, 213; 78 Ark. 331.

McCULLOCH, C. J. The plaintiff instituted this action against defendant railway company to recover for injuries alleged to have been sustained while she was at-

tempting to board one of the trains as a passenger. Negligence of the company's servants is alleged in failing to stop the train a sufficient length of time and at a proper place to enable her to board the train; and that in walking down the platform to get to the coach she stumbled over a rock or other obstruction and sustained severe physical injury. Willful misconduct on the part of the conductor is also alleged in refusing to back the train up to allow plaintiff to get aboard, and that on that account she was denied the privilege of riding to her destination and was forced to walk through the rain and mud a distance of three miles, to her great injury and inconvenience. The plaintiff prayed for compensatory and also for exemplary damages, and the jury awarded $1,000 for the first named element and $500 for the latter.

The occurrence which is the subject-matter of this controversy was at a flag station on defendant's road about three miles east of Argenta. The plaintiff had been working for several weeks at a plant near that station, and relinquished her employment there on the day her injury occurred. It was Saturday night, and she desired to board the train to come to Argenta. It was a local passenger train and passed this station a little before 8 o'clock, and the weather was bad—it was dark and rainy. There were several other passengers besides plaintiff, one of them a man with a lantern, who flagged the train as it approached. There was a small gravel platform, according to the evidence, and the front coach, which was the coach for colored passengers, stopped at this platform. Plaintiff's brother was with her, and they started to board the train, but the porter directed them to go on down to the last coach, and they started in that direction; and after walking a short distance, but before they reached the last coach, plaintiff stumbled over a log or some other obstruction and fell down, her side striking one of the ties, and severe injury was inflicted. The evidence tends to show, also, that the train moved out from the station before the plaintiff and her brother and the other white passengers could get down to the entrance to the coach

where they would be admitted. The train pulled up a short distance—150 or 200 yards—and the man with the lantern again flagged it, when it was stopped and backed down a short distance and the man climbed aboard from the rear. The conductor was informed that there were other passengers, but he declined to back the train down again, stating, according to the testimony of one of the witnesses, that he had passengers aboard who had paid three or four dollars fare and that he would not back up again for six-cent passengers. Plaintiff and her brother walked to Argenta that night and were exposed to the bad weather. The evidence tends to show that the injury received by plaintiff from the fall was painful and severe.

The first assignment of error relates to the ruling of the court in giving one of plaintiff's instructions, which reads as follows:

"If you believe from the evidence that plaintiff, at the regular stopping place prepared for passengers by defendant, offered herself as such passenger and put herself under the control and direction of employees of defendant in charge of its train, then she was a passenger of defendant. The court instructs you further that a carrier of passengers owes its passengers the highest degree of care consistent with the reasonable and practicable operation of its train, and is liable for the smallest negligence which results in injury to its passengers, and if you believe from the evidence that by reason of the failure of the defendant to exercise such high degree of care for protection of plaintiff after she offered herself as a passenger on defendant's train, she received the injury alleged, then defendant is liable, and your verdict should be for plaintiff."

(1)  We are of the opinion that this instruction placed upon defendant too high a burden of care, and was erroneous. The injury of plaintiff resulting from the fall, if from any negligence at all, was caused by the failure of the defendant to provide a proper station platform to enable passengers to board the trains, and the rule in such cases is, as we have said, that the railroads are re-

quired only to "exercise ordinary care in providing station platforms that will secure their passengers insofar as they can do so, against any injury, that may result from the use of them." *St. Louis, I. M. & S. Ry. Co.* v. *Barnett*, 65 Ark. 255. The same rule was announced in the later case of *St. Louis, I. M. & S. Ry. Co.* v. *Woods*, 96 Ark. 311.

(2) The correct rule is stated by Mr. Elliott as follows: "A railroad company is under a duty to exercise ordinary and reasonable care to so construct and maintain station buildings, or depots and appurtenances, that they shall be safe for use by passengers. The duty respecting the construction and maintenance of station buildings is not so rigorous as that imposed upon railroad carriers in relation to roadbeds, tracks, cars, appliances and the like. Some of the cases seem to lose sight of the difference between the duty respecting station buildings and that respecting means and modes of conveyance, but the well-reasoned cases recognize the distinction and affirm that a railroad company that exercises ordinary care in constructing and maintaining station buildings and appurtenances in a reasonably safe condition for use is not guilty of negligence." Elliott on Railroads, Vol. 4, § 1590.

The measure of care stated in the instruction which the court gave applies only to the operation of trains, and not to stational facilities. Counsel for plaintiff rely upon the recent case of *Prescott & N. W. Ry. Co.* v. *Thomas*, 114 Ark. 56, 167 S. W. 486, decided by this court. In that case the plaintiff was injured by reason of a slippery substance being placed on one of the steps of the car which caused her to slip and fall when she was undertaking to alight from the train. We held that the higher degree of care applied in that case for the obvious reason that the passenger in stepping down from the coach was still under the immediate care of the servants of the railroad company, and that they still owed her the high degree of care due while in the operation of trains. The steps of the train constitute a part of the appliances for the ac-

ccmmodation of passengers boarding and debarking and the rule of care is the same as if the train was in actual motion, the reason being that the passenger is at that time within the entire control of those who are responsible for the handling of the train. Such is not the case, however, when a passenger is out on the platform and is merely seeking to board the train, and the rule in those cases is that only ordinary care is required; or, in other words, such care as can be measured by the conduct of a reasonably prudent person under the same circumstances. In the Thomas case, *supra,* we called attention to the fact that the language of the instruction in that case only meant ordinary care, for it said that the defendant under the circumstances mentioned owed to the passenger "the highest degree of care which a prudent and cautious man would exercise, reasonably consistent with its mode of conveyance and the practical operation of its trains." The instruction in the present case, however, goes much further and states the law to be, as applicable to the facts of this case, that "a carrier of passengers owes its passengers the highest degree of care consistent with the reasonable and practical operation of its trains and is liable for the smallest negligence which results in injury to its passengers." The instruction says nothing about the degree of care which a prudent and cautious man would exercise under like circumstances. Other instructions along the same line were given and all of them were erroneous, and we think they were prejudicial.

(3) In view of another trial of the case, we deem it proper to say that the evidence was wholly insufficient to warrant a recovery of punitive damages. According to the evidence adduced by the plaintiff, the train had stopped for a few moments, and after it pulled out and moved away 150 or 200 yards it was stopped in response to the signals from the passenger with a lantern, then backed up and again put in motion, and the only particle of evidence upon which the plaintiff attempts to support a recovery is that the conductor wilfully refused to back up the train for the reason, as has been stated, that he

was unwilling to back up for a passenger who was only to pay a fare of six cents. There is no evidence that the conductor knew that any misdirection had been given to the plaintiff or that no time and opportunity had been given her to board the train. All that is shown is that after he had stopped the train and backed it up and took on another passenger he refused to back up again. We have said that negligence, however gross, was not sufficient to warrant the infliction of punitive damages. *Arkansas & Louisiana Ry. Co.* v. *Stroude,* 77 Ark. 109. The most that the evidence shows in this case is that the conductor refused to back the train up again, and it is not sufficient to warrant the assessment of damages by way of punishment to the railway company.

The judgment is therefore reversed and the cause remanded for a new trial.