CHICAGO, R. I. & G. RY. CO. v. FAULK-
NER et al. (No. 8554.)

(Court of Civil Appeals of Texas. Ft. Worth.
March 24, 1917. Rehearing Denied
April 28, 1917.)

1. APPEAL AND ERROR ⚖➡613(1)—BILL OF EX-
CEPTIONS—APPROVAL.

Where a bill of exceptions is not approved by the trial judge, an objection to the consideration of the assignment of error on that ground is valid.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2702–2704.]

2. EVIDENCE ⚖➡501(2)—CONCLUSIONS — AD-
MISSIBILITY.

In an action against a carrier for injuries alleged to have resulted from contracting a severe cold while waiting for a train in defendant's station, testimony of the plaintiff that she caught cold in the depot was admissible and not objectionable as a conclusion where she gave the facts upon which she based such opinion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2296.]

3. TRIAL ⚖➡121(3)—REMARKS OF COUNSEL.

Remarks of counsel for the plaintiff in his argument to the jury "that a few thousand dollars won't compensate this good woman for the injuries she has sustained" was not an abuse of the right of counsel to comment on the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 297.]

4. APPEAL AND ERROR ⚖➡1060(1)—REMARKS
OF COUNSEL—HARMLESS ERROR.

Argument of plaintiff's counsel that "the railway company was more to blame than the agent, H., for it was overworking him at that place because he told old man R. and F. [plaintiff's husband] that he could not work day and night," predicated upon testimony of the persons mentioned that such response was given by the station agent when requested to start a fire in the waiting room because of the fact that the room was cold, was not necessarily so inflammatory and prejudicial as to require a reversal of the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135.]

5. CARRIERS ⚖➡286(8)—CARRIAGE OF PASSEN-
GERS—STATION—NEGLIGENCE—STATUTE.

Failure to comply with Vernon's Sayles' Ann. Civ. St. 1914, art. 6591, requiring each railroad company to keep its depots lighted and warmed and open to all passengers who are entitled to go therein for not less than one hour before the arrival and departure of all trains carrying passengers and providing a penalty for its violation, is negligence per se.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1150.]

6. CARRIERS ⚖➡320(7)—CARRIAGE OF PASSEN-
GERS—STATION—NEGLIGENCE—STATUTE.

Sanitary Code (Vernon's Sayles' Ann. Civ. St. 1914, art. 4553a), rule 52, requiring each depot, railway coach, etc., while in use for the accommodation of the public to be properly ventilated, and, if necessary, heated, etc., had application to the case of passengers waiting for a delayed train, and failure to perform that duty would be negligence as a matter of law.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1149, 1153.]

7. CARRIERS ⚖➡321(5)—CARRIAGE OF PASSEN-
GERS—EVIDENCE—SUFFICIENCY.

Where there was no suggestion in the evidence that plaintiff's physical condition was abnormal to such an extent as to require more heat to make her comfortable than required for ordinary persons, and her companions testified that the station was uncomfortably cold to them, there was no error in the submission of an issue as to whether or not the station was "kept warm to such a degree as would be comfortable for plaintiffs."

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1329.]

8. CARRIERS ⚖➡318(2)—CARRIAGE OF PASSEN-
GERS—EVIDENCE—SUFFICIENCY.

Evidence held to sustain a jury's finding that, in consequence of absence of heat in the waiting room, the plaintiff contracted a cold which resulted in the injury complained of.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 936, 937.]

Appeal from District Court, Montague County; C. F. Spencer, Judge.

Action by Mittie Faulkner and another against the Chicago, Rock Island & Gulf Railway Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

John Speer, of Bowie, and Lassiter & Harrison, of Ft. Worth, for appellant. H. F. Weldon, of Bowie, and Ocie Speer, of Ft. Worth, for appellees.

DUNKLIN, J. On December 26, 1913, R. B. Faulkner and his wife, who resided in Wichita county, in the town of Petrolia, were visitors at the home of Mr. Rowe, the father of Mrs. Faulkner, in Montague county, about two miles from the town of Stoneberg, a small station on the Chicago, Rock Island & Gulf Railway, a short distance from the town of Bowie, another station on the same railway. The route of travel by railway from Mr. Rowe's home to the home of Mr. and Mrs. Faulkner in Petrolia was over the Chicago, Rock Island & Gulf Railway from Stoneberg to the town of Ringgold, from Ringgold to Wichita Falls over the Missouri, Kansas & Texas Railway, and from Wichita Falls to Petrolia over the Wichita Valley Railway. On the date mentioned above a passenger train over the Rock Island Railway was scheduled to leave Stoneberg for Ringgold at 11:47 p. m. Prior to that hour Mr. Faulkner inquired of the station agent at Bowie, over the telephone, whether

or not that train would reach Stoneberg that night on schedule time, and the reply of the agent was in the affirmative. Acting upon that assurance, Mr. and Mrs. Faulkner drove with Mr. Rowe in an open wagon to Stoneberg, reaching there shortly prior to the hour the train was due. It happened that on account of an accident the train was delayed and did not reach Stoneberg until about 3 o'clock of the morning of December 27th, at which time it was boarded by Mr. and Mrs. Faulkner on their return trip home. At the town of Ringgold the stations of the Chicago, Rock Island & Gulf Railway Company and the Missouri, Kansas & Texas Railway Company were about one mile apart, and Mr. and Mrs. Faulkner rode in an omnibus from the Rock Island station to the Missouri, Kansas & Texas Railway station after their arrival at Ringgold, which was only a short time from the time they left Stoneberg, as Ringgold was but a short distance from Stoneberg.

This suit was instituted by Mr. and Mrs. Faulkner against the Rock Island Railway Company to recover damages for injuries suffered by Mrs. Faulkner, which plaintiffs alleged resulted from contracting a severe cold while waiting in the station at Stoneberg for the delayed train. According to allegations in their petition, the night was cold and the waiting room at the station was not properly heated, and that condition was the proximate cause of Mrs. Faulkner's said illness, and the failure of the railway company to properly warm the waiting room was negligence. It was further alleged that the cold so contracted resulted in a case of chronic bronchitis; that by reason of such illness she sustained great physical suffering and loss of ability to perform her household duties, and also was compelled to incur expenses for medical treatment.

A trial before a jury resulted in a verdict in favor of the plaintiffs, from which the defendant has appealed.

[1, 2] Complaint is made of the admission of the testimony of Mrs. Faulkner to the effect that she caught cold in the depot at Stoneberg, on the ground that it was "clearly a conclusion and a guess upon her part," especially in view of the fact that she had driven from her father's home to the station in an open wagon during the same night, a distance of two miles, and had also exposed herself to the cold in driving from one station to another in the town of Ringgold. The bill of exception shown in the record to the introduction of that testimony does not appear to have been approved by the trial judge, and appellees object to a consideration of the assignment for that reason. Of course, that is a valid objection, but, aside from that contention, we are of the opinion that the objection to the testimony was properly overruled, since the witness gave the facts upon which she based that opinion. She said that at that station she began to

sneeze, feel chilly, and cold and began to ache, that she first observed that condition some time between 12 and 1 o'clock, and that she grew worse from that time on. G., C. & S. F. Ry. Co. v. Richards, 83 Tex. 203, 18 S. W. 611; St. L. & S. F. Ry. Co. v. Sizemore, 53 Tex. Civ. App. 491, 116 S. W. 403.

[3] We are of the opinion that the remarks of counsel for plaintiff in his argument to the jury "that a few thousand dollars won't compensate this good woman for the injuries she has sustained" was not an abuse of the right of counsel to comment upon the weight of the evidence. Besides, the record shows that appellants' objection to the argument was promptly sustained by the trial judge.

[4] The further argument by plaintiff's counsel that "the railway company was more to blame than the agent, Hunt, for it was overworking him at that place because he told old man Rowe and Mr. Faulkner that he could not work day and night," was predicated upon the testimony of Mr. Rowe and Mr. Faulkner that such a response was given by the station agent, Hunt, at Stoneberg after the agent had retired for the night and when those witnesses requested him to start a fire in the waiting room because of the fact that the room was cold. When the argument was objected to by appellant's counsel, the objection was sustained by the court, who thereupon instructed the jury not to consider it. Furthermore, the argument did not purport to go further than to draw a conclusion from the testimony referred to, and we cannot agree with appellant's contention that it was necessarily so inflammatory and prejudicial as to require a reversal of the judgment.

The trial court charged the jury as follows:

"It was the duty of the defendant railway company, its agents or employés, to use a high degree of care to have the waiting room at the Stoneberg station in a reasonably warm and comfortable condition for the accommodation of the plaintiffs, who went to said station for the purpose of taking passage on the passenger train on which they did leave said Stoneberg"

—and further charged as follows:

"A 'high degree of care' is that care which a very careful, cautious, and prudent person would exercise under the same or similar circumstances, and the failure to use a high degree of care, where such care is required by law, is negligence."

Under the assignment of error addressed to those instructions the following proposition is submitted:

"The charge was error because, as to the condition of the waiting room with respect to warmth, the defendant was only under a duty to use reasonable care to have it sufficiently warmed, and not under a duty to use a high degree of care to that end."

In Hutchinson on Carriers, par. 521a, the following is said:

"The degree of care required of railway carriers in respect of its stational arrangements is therefore not so great as in respect of its tracks and running machinery. * * * The rule in such cases is that the carrier is bound simply

to exercise ordinary care in view of the dangers to be apprehended."

To the same effect is Elliott on Railroads, vol. 4, p. 1590. Appellant also cites several other authorities in support of the proposition quoted, such as Trinity & So. Ry. Co. v. O'Brien, 18 Tex. Civ. App. 690, 46 S. W. 389; H. E. & W. T. Ry. Co. v. McCarty, 40 Tex. Civ. App. 364, 89 S. W. 805; K. C. So. Ry. Co. v. Cobb, 118 Ark. 569, 178 S. W. 383, by the Supreme Court of Arkansas; and C., R. I. & P. Ry. Co. v. Owens, 118 Ark. 467, 177 S. W. 8, by the same court.

The rule so announced in Hutchinson on Carriers is, no doubt, the common-law rule which would control in the absence of any statutory provision upon the subject. However, we have statutes in this state defining the duties of railroads with respect to warming their passenger stations. Article 6591, Vernon's Sayles' Texas Civil Statutes, is as follows:

"Every railroad company doing business in this state shall keep its depots or passenger houses in this state lighted and warmed, and open to the ingress and egress of all passengers who are entitled to go therein, for a time not less than one hour before the arrival and after the departure of all trains carrying passengers on such railroad; and every such railroad company, for each failure or refusal to comply with the provisions of this article, shall forfeit and pay to the state of Texas the sum of fifty dollars, which may be sued for and recovered in the name of the state in any court of competent jurisdiction, and shall be liable to the party injured for all damages by reason of such failure."

In T. & P. Ry. Co. v. Cornelius, 10 Tex. Civ. App. 125, 30 S. W. 720, in which a writ of error was denied by our Supreme Court, it was held that the common-law rule announced above would apply for the failure to properly warm the station for a period of time not .covered by that article of the statute. The statute quoted was enacted in the year 1891, and the decision last noted was rendered in March, 1895, and several other decisions are to the same effect, such as S. K. Ry. Co. v. Caylor, 135 S. W. 1087. Article 4553a, Vernon's Sayles' Texas Civil Statutes, enacted in 1911, contains 79 rules as the "Sanitary Code for Texas adopted for the promotion and protection of the public health," etc. Rule 52 of that article reads as follows:

"Each depot, railway coach, sleeping car, interurban car and street car while in use for the accommodation of the public shall be properly ventilated, and, if necessary, heated, and a sufficient amount of heat shall be furnished in time of need so that fresh air can be supplied without causing it to become unduly or uncomfortably cold; and the janitor, conductor, caretaker or other person in charge shall see to it that the air is replenished with fresh air from time to time as needed to prevent the same from becoming foul, unsanitary or oppressive."

And the article concludes as follows:

"Any person who shall violate any of the rules, regulations or provisions of the Sanitary Code of Texas, as herein set forth, shall be deemed guilty of a misdemeanor and upon conviction shall be fined in any sum not less than ten dollars and not more than one thousand dollars:

"Provided, this act shall not be construed to repeal any of the laws of this state now in force affecting the public health, which are not clearly in conflict herewith, but shall be construed to be cumulative to said laws."

[5] It is too well settled to need the citation of authorities that a violation of such statutes as those referred to above is negligence per se. Neither in the trial court nor here has appellant presented the specific contention that the common-law rule would apply to the period of time not covered by article 6591, and that a different rule would apply to the period of time so covered; but, as shown by the proposition quoted, the contention is that the common-law rule would apply and govern as to the whole period of time plaintiffs waited at the station for the train in Stoneberg. Aside from rule 52 of the Sanitary Code, the proposition as presented could not be sustained, since the court could have peremptorily instructed the jury that a failure to comply with the provisions of article 6591 was negligence per se.

[6] Furthermore, under the facts of this case, we are of the opinion that rule 52 of the Sanitary Code is also applicable here, and, as it enjoined upon appellant the duty to keep the station heated for the accommodation of the public, if heat was necessary, during the entire time plaintiffs waited for the delayed train, the failure to perform that duty would be negligence as a matter of law, and that the charge of the court complained of was more favorable than appellant had a right to expect.

[7] In submitting plaintiffs' case to the jury, the court submitted the issue whether or not the station was "kept warm to such a degree as would be reasonably comfortable for plaintiffs." The language so quoted is criticized as imposing a higher duty than is required by law, in that the station "might be reasonably warmed and yet not warm enough to be comfortable to the plaintiff." It is a sufficient answer to the assignment presenting that contention to say that there is no suggestion in the evidence that Mrs. Faulkner's physical condition was abnormal to such an extent as to require more heat to make her comfortable than would be required for the ordinary person. On the contrary, her companions also testified that the station was uncomfortably cold to them.

[8] We are of the opinion further that the evidence was sufficient to sustain the finding by the jury that, as a consequence of the absence of heat in the waiting room, Mrs. Faulkner contracted a cold which resulted in the injuries complained of, and for which the jury allowed damages. Nor can we say that the damages so allowed were so excessive as to require a reversal of the judgment, as insisted by appellant.

For the reasons indicated, all assignments of error are overruled, and the judgment is affirmed.